```
                  UNITED STATES DISTRICT COURT

                  EASTERN DISTRICT OF LOUISIANA


THOMAS MICHAEL COSTANZA                       CIVIL ACTION

v.                                            NO. 14-0488

TCHEFUNCTE HARBOUR                            SECTION "F"
ASSOCIATION, INC., ET AL.
```

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is GRANTED.

**Background**

This litigation arises from a townhouse association's alleged attempts to enforce restrictions on a townhouse owner's display of his American flag.

Thomas Michael Constanza owns and resides in two townhouse units located at 127 Highway 22 East in Madisonville, Louisiana. Tchefuncte Harbour Association, Inc. is the owner and operator of the townhouse development, as well as the homeowner's association that manages the property; Albert Oglesby is employed by Tchefuncte as the association manager. Alcor Group, L.L.C. manages the development.

1

In May 2013 Constanza began displaying the American flag outside the door to his townhouse. The Association has advised Constanza that his flag display violates the parties' convenants and restrictions applicable to his townhouse. Negotiations between the parties failed. Costanza continues to display the flag. In October 2013 the Association recorded in the mortgage records for the Clerk of Court of St. Tammany Parish a lien and privilege affidavit against Constanza's property; a portion of this lien relates to Costanza's flag display.

After more failed negotiations and alleged harassment by the Association (through Mr. Oglesby), Costanza sued the Association, the Alcor Group, and Oglesby in this Court, invoking this Court's federal question jurisdiction. Costanza seeks a declaration, pursuant to the Freedom to Display the American Flag Act of 2005, that the actions of the Association are invalid. He also seeks damages and attorney's fees pursuant to 42 U.S.C. § 1983 for the defendants' alleged infringement of his First Amendment rights. The defendants now seek dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A

& M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050. Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly

3

give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as

other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

II.

A.   The Freedom to Display the American Flag Act of 2005

The defendants seek dismissal of the plaintiff's claim for declaratory relief under the Freedom to Display the American Flag Act on the ground that the Act provides no private right of action.  The Court agrees.

4 U.S.C. § 5, entitled "Display and use of flag by civilians; codification of rules and customs; definition", provides:

> The following codification of existing rules and customs pertaining to the display and the use of the flag of the United States of America is established for the use of such civilians ... as may not be required to conform with regulations promulgated by one or more executive departments of the Government of the United States....

In 2006 Congress passed the Freedom to Display the American Flag Act of 2005, Pub.L. No. 109-243, 120 Stat. 572 (2006).  The Act, codified as a note to 4 U.S.C. § 5, provides:

> A condominium Association, cooperative Association, or residential real estate management Association may not adopt or enforce any policy, or enter into any agreement, that would restrict or prevent a member of the Association from displaying the flag of the United States

> on residential property within the Association with respect to which such member has a separate ownership interest or a right to exclusive possession or use.

The Act further states:

> Nothing in this Act [this note] shall be considered to permit any display or use that is inconsistent with--
> (1) ... any rule or custom pertaining to the proper display or use of the flag; or
> (2) any reasonable restriction pertaining to the time, place, or manner of displaying the flag of the United States necessary to protect a substantial interest of the condominium association, cooperative association, or residential real estate management association.

<u>Id.</u> Noticeably absent from the text of the Act is an express creation of a private right of action, any explicit enforcement mechanism or remedy, or any reference to penalties or sanctions to be imposed for violations. The Act is simply an example of poor draftmanship. The plaintiff urges the Court to divine an implied right of action by resort to the factors analyzed in <u>Cort v. Ash</u>, 422 U.S. 66 (1975). But resort to the legislative history of the Act does not compel the plaintiff's desired result.

To be sure, the U.S. Court of Appeals for the Fifth Circuit continues to apply the four factors articulated in <u>Cort</u>,[1]

---

[1] "To determine whether we should infer a cause of action when one is not explicitly authorized by Congress," the Fifth Circuit has instructed, "we must answer the[se] four questions":

> (1) whether the plaintiff is one of a class for whose especial benefit the statute was enacted;
> (2) whether there is an indication of legislative intent to create or deny such remedy;
> (3) whether such a remedy would be

notwithstanding observations that the Cort analysis has shifted to focus exclusively on legislative intent. See California v. Sierra Club, 451 U.S. 287, 293 (1981)("Cases subsequent to Cort have explained that the ultimate issue is whether Congress intended to create a private right of action..., but the four factors ... remain the 'criteria through which this intent could be discerned'"); Thompson v. Thompson, 484 U.S. 174, 178 (1988)("In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute"); Thompson, 484 U.S. at 189 (Scalia, J., concurring)("It could not be plainer that we effectively overruled the Cort v. Ash analysis in Touche Ross& Co. v. Redington, 442 U.S. 560, 575-576, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979), converting one of its four factors (congressional intent) into *the determinative factor*, with the other three merely indicative of its presence of absence")(emphasis in original); Wright v. Allstate Ins. Co., 500 F.3d 390, 395 (5th Cir. 2007)(acknowledging that "the determinative question is whether Congress intended to create a private right of action in

---

        inconsistent with the underlying legislative purpose; and
        (4) whether the cause of action is one traditionally relegated to state law.

Wright v. Allstate Ins. Co., 500 F.3d 390, 395 (5th Cir. 2007)(quoting Cort v. Ash, 422 U.S. 66, 78 (1975)).

favor of the plaintiff" but nonetheless analyzing each of the four factors).

The plaintiff alleges that, by harassing him and attempting to enforce the covenants restricting his display of the flag on his townhouse, the Association has (and continues to) violate the Act, and the Court should declare that the Association is conducting itself contrary to the Act. But, no matter how questionable the Association's rule or attitude, "'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979)(quotation omitted).

Turning to the determinative question: Did Congress intend to create the private right of action Costanza asserts?

The answer is, simply, no. As already noted, there is nothing in the text of the statute to support the creation of a private right of action. Nor is there any reference to a remedy, an enforcement mechanism, or penalties to be imposed for violations. Likewise, there is nothing implicit in the language or structure of the Act, or apparent from the circumstances of its enactment, that suggests congressional intent to establish a private right of action. In fact, one other district court that has considered this issue in an identical context -- a condominium owner challenging the condominium association's restrictions on his display of the

American flag -- examined the legislative history and declined to find an implied right of action. In <u>Murphree v. The Tides Condominium at Sweetwater by Del Webb Master Homeowners' Association, Inc.</u>, the district court observed:

> Legislative history regarding the Act ... is sparse.... The bill's sponsor, Representative Roscoe Bartlett, of Maryland, introduced H.R. 42 as a bill "to ensure that the right of an individual to display the flag of the United States on residential property not be abridged." ... [Rep. Bartlett] explained: "It is a very simple bill. It simply says that a homeowner or condominium owner cannot be prohibited from flying the flag of his country. It also says that the association may place reasonable limits on the time and the manner of displaying the flag." Representative Dennis Moore of Kansas spoke in support of the bill, saying that the bill "ensures that Americans may display the American flag wherever they live," by providing that a condominium association "may not prohibit a resident of the association from displaying the American flag on their property within the association." ... The United States House of Representatives passed the bill on June 27, 2006, by voice vote. The United States Senate engaged in no discussion of the bill, which passed by the unanimous consent of the members of the Senate on July 17, 2006.

No. 13-713, 2014 WL 1293863, at *11 (M.D. Fla. March 31, 2014) (internal citations omitted).[2] In other words, the legislative

---

[2] Notably, case literature considering the predecessor statute to the Flag Code (now 4 U.S.C. § 5) held that the statute was "merely advisory" and was "not intended to proscribe conduct." <u>Dimmitt v. City of Clearwater</u>, 985 F.2d 1565, 1573 (11th Cir. 1993)("even if the Flag Code were intended to proscribe behavior, [there had been no showing] that the Flag Code contains an implicit right of action..."). The district court in <u>Murphree</u> acknowledges that, although it could locate no court decision discussing the Act, the Eleventh Circuit in <u>Dimmitt</u>, in considering the predecessor statute, observed that "the statute consistently used the term 'should' rather than 'shall' when discussing the customs [and, the Eleventh Circuit observed] that 'Congress attached no penalty provisions for noncompliance with the display

history is silent on the issue of whether a private right of action should be available under the Act. Under these circumstances, the Court must heed the U.S. Supreme Court's prudent cautionary instruction: "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." Touche Ross & Co. v. Redington, 442 U.S. 560, 571 (1979)(citation omitted).

With respect to the touchstone of an implied rights inquiry -- legislative history -- the plaintiff advances no support for the outcome he seeks; he understandably asks "Why would Congress enact this Statute if [it] did not intend for it to have teeth and grant the protected class a remedy in this exact situation?" The Court wonders as well. The plaintiff is clearly frustrated. But rhetoric is not a predicate for the implication of a private remedy.[3] Rather, "[t]he intent of Congress remains the ultimate

---

provisions...' [whereas] Congress enacted specific penalties for persons manufacturing service flags or lapel buttons without a license." Murphree, 2014 WL 1293863, at *12-13.

[3] To accept the plaintiff's argument, the Court would forego any inquiry into implied rights and simply imply them whenever Congress failed to do so. But "[a]s countless statutes demonstrate ... Congress recognizes that the creation of private actions is a legislative function and frequently exercises it. When Congress chooses not to provide a private civil remedy, federal courts should not assume the legislative role of creating such a remedy and thereby enlarge their jurisdiction." See Thompson, 484 U.S. at 189 (Scalia, J., concurring)(quoting Cannon v. University of Chicago, 441 U.S. 677, 730-731 (1979)(Powell, J., dissenting)). On the other hand, "[i]f we were to announce a flat rule that private rights of action will not be implied in statues hereafter enacted, the risk that that course would occasionally

issue ... and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate of private remedy simply does not exist.'" Thompson v. Thompson, 484 U.S. 174, 179 (1988)(quoting Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77 (1981)). The plaintiff offers up no source that would support his hope that he has a private right of action under the Act. Accordingly, his request for declaratory relief pursuant to the Act must fail.

B. 42 U.S.C. § 1983

Costanza also charges that the defendants violated his First Amendment rights by harassing him, fining him, and otherwise interfering with his display of the American flag. The defendants contend that dismissal of Costanza's § 1983 claim is warranted because they are not state actors, although Costanza persists that filing a lien in the mortgage records, a portion of which arises from his display of the flag, rises to the level of state action. He is simply wrong.

---

frustrate genuine legislative intent would decrease from its current level of minimal to virtually zero." Thompson, 484 U.S. at 192 (Scalia, J., concurring)("[I]t is my view that, if the current state of the law were to be changed, it should be moved ... away from our current congressional intent test to the categorical position that federal private rights of action will not be implied.... If a change is to be made, we should get out of the business of implied private rights of action altogether.").

Title 42, U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

(1) deprivation of a right secured by the U.S. Constitution or federal law,
(2) that occurred under color of state law, and
(3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins., Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)(internal quotation marks and citation omitted). Thus, the general rule is that private companies or individuals "are not considered to act under color of law, i.e., are not considered state actors." Ballard v. Wall, 413 F.3d 510, 518 (5th Cir. 2005). However, a private company or citizen may be held liable under § 1983 if that citizen conspired with or acted in concert with state actors; the private citizen must be a "willful participant in joint activity with the State or its agents." See Priester v. Lowndes County, 354 F.3d 414, 420 (5th Cir.

2004)(citations omitted).

Costanza invokes Shelley v. Kraemer, 334 U.S. 1 (1948) in support of his state action theory.[4] The petitioners in Shelley had purchased residential properties that were subject to racially-based restrictive covenants; the covenants were enforced through state court action. The U.S. Supreme Court ruled that state judicial enforcement of racially restrictive covenants in land deeds constituted state action that violated the Equal Protection Clause of the Fourteenth Amendment. Id. at 19-20. Notably, in Shelley, the petitioners were subject to state court orders divesting them of title in their properties; that state court orders were in place to enforce the racially discriminatory covenants quite reasonably compelled a finding of state action. Id. ("[B]ut for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint.").

Here, Costanza alleges that the Association has recorded a lien on his property, a portion of which relates to Costanza's

---

[4]Costanza does not allege that the defendants, private companies and a private individual, entered into an agreement with some public entity to deprive him of his First Amendment rights. Instead, he contends that, by filing a lien in St. Tammany Parish, the defendants' actions arise to the level of state action.

display of the flag;[5] but, unlike the state court orders actually issued in Shelley to enforce the racially restrictive covenants, Costanza alleges no such judicial intervention or enforcement of the Association's lien. Without it, his state action theory fails as a matter of law.[6] Because the plaintiff offers no facts from which the Court can infer state action on the part of these private defendants, he has not stated a claim for relief under § 1983.

Accordingly, the defendants' motion to dismiss is GRANTED, and the plaintiff's claims are hereby dismissed.[7]

---

[5]The parties dispute whether or not the flag is being displayed on Costanza's property or on common property. This dispute is irrelevant for the purposes of resolving the motion to dismiss.

[6]The case literature invoked by the defendants bolsters this conclusion. See, e.g., Loren v. Sasser, 309 F.3d 1296, 1303 (11th Cir. 2002)(mere threat of judicial enforcement of homeowner's association's restriction preventing homeowner's display of "For Sale" sign in front yard on subdivision property did not constitute state action; noting that "Shelley has not been extended beyond race discrimination"); Barr v. Camelot Forest Conservation Ass'n, Inc., 153 Fed.Appx. 860, 862 (3d Cir. 2005)(homeowner's association's removal of "For Sale" signs from homeowner's property and enforcement of deed restriction did not involve state action), cert. denied, 547 U.S. 1193 (2006); Murphree v. The Tides Condominium at Sweetwater by Del Webb Master Homeowners' Association, Inc., No. 13-713, 2014 WL 1293863, at *8 (M.D. Fla. March 31, 2014) (addressing circumstances nearly identical to Costanza's and concluding that, in failing to allege any judicial enforcement of the restrictive covenants, the plaintiff fails to allege state action).

[7]In commencing this lawsuit in federal court, Costanza invoked this Court's federal question jurisdiction. In determining that Costanza failed to state a claim under the Act and that he failed to state a claim under § 1983, the only remaining allegations in his complaint are that he is entitled to a declaratory judgment and that he "also alleges a state cause of

New Orleans, Louisiana, July 14, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

action in this matter."  Costanza's claim for declaratory relief was predicated on his claim under the Freedom to Display the American Flag Act, which fails as a matter of law.  Of course, the Declaratory Judgment Act does not, standing alone, confer jurisdiction upon federal courts.  See Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir. 1997).  Rather, it authorizes a federal court, "in a case of actual controversy within its jurisdiction[,] to "declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201.  In short, because Costanza's claim for declaratory relief is premised on an alleged violation of the Freedom to Display the American Flag Act, and there is no right of action under the latter, his claim for declaratory relief cannot stand alone and, therefore, fails.  Finally, Costanza neither articulated in his complaint nor identified in his opposition papers the "state cause of action" he alludes to in his complaint.

15